UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE BROADNAX,

                                    2:12-CV-12744

    Plaintiff,                         Hon.  GERSHWIN A. DRAIN

 v.

CHAD DOUBLE, *et al.*,

    Defendants.

---

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#29] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#30]**

**I.  Introduction**

Clarence Broadnax filed a Complaint with this Court on June 21, 2012 alleging violations of his constitutional rights by Detective Double and the City of Farmington Hills under 42 U.S.C. §1983 for false arrest, false imprisonment, malicious prosecution, and denial of due process.  He asserted a federal claim of unconstitutional policy or custom against  the City of Farmington Hills as well.  He also asserts state claims for unlawful arrest, malicious prosecution, false imprisonment, and gross negligence.  On July 26, 2013, Defendants filed a Motion for Summary Judgment with this Court to dismiss all of Broadnax's claims.  On July 29, 2013, Broadnax filed a Motion for Partial Summary Judgment on his federal claims.  A hearing on these motions was held on Wednesday, September 18, 2013.

For the reasons that follow, the Court will DENY Defendants' Motion for Summary Judgment on Plaintiff's federal false arrest/imprisonment claim, malicious prosecution claim,

and denial of due process claim. The Court will GRANT Summary Judgment to Defendant Farmington Hills on Plaintiff's unconstitutional policy claim. The Court will GRANT Summary Judgment to Defendants on Plaintiff's state law claims, except for the gross negligence claim. Lastly, the Court will DENY Plaintiff's Motion for Summary Judgment.

## II.    Factual Background

On April 30, 2011, at approximately 4:20 p.m. an assailant attempted to carjack Alexandria Ciceri ("Ciceri"), who was purchasing items at a 7-Eleven in Farmington Hills Michigan. She left the store and reentered her car. When she started her car, the assailant grabbed her right arm and ordered her to keep driving. Ciceri stopped the car and honked the horn. The assailant left the vehicle and fled on foot. Ciceri later called the Farmington Hills Police department to report the incident. She described the assailant as a black male, approximately thirty years old, six feet tall, and weighing approximately 220 pounds. The assailant was bald, had dark eyes, and wore a dark jacket with a white stripe.

The department assigned the case to Detective Chad Double ("Double"). He went to the crime scene and obtained surveillance video from the 7-Eleven and a nearby business, Rare Coins. The Rare Coins camera had only one camera angle, but 7-Eleven had eight camera angles. Although the 7-Eleven surveillance had eight angles, Double did not review all of the angles, and only gave angle #8 to the prosecutor. (Def.'s Ex. 3, Double Dep. at 16). Double said he did not review all of the angles because the storeowner told him only angle #8 had a clear depiction of the parking lot. *Id*. at 18-19. Double observed a man in angle #8 who fit the description the victim gave him.

Double took photographs of the suspect from the Rare Coins video and showed them to Ciceri. She said she was "pretty sure" the man in the video was the man who attempted to

carjack her.  (Def.'s Ex.2 at 34-35).  Doubled released the Rare Coins video to the media to get

help finding the man from the video.  After seeing the media solicitation for help identifying the

man in the video, Melissa Pappas ("Pappas") called the Farmington Hills Police Department and

identified the man in the video as Clarence Broadnax ("Broadnax").  Pappas is the sister of a

woman, Amanda Albers ("Albers"), with whom Broadnax fathered a child.  Broadnax and

Albers were engaged in a custody battle for their child at the time of the identification.

Double met with Pappas and showed her video from the Rare Coins camera as well.  She

confirmed her identification of Broadnax.  Pappas recognized the man in the video as Broadnax

based on his clothes, weight, size, and shape.  (Def.'s Ex.7, Pappas Dep. 11-13, 29-30).  Albers

was also at the meeting between Pappas and Double and saw the video.  She too believed the

man in video was Broadnax.  She recognized the man as Broadnax by his walk, build, style of

dress, head shape, and skin tone.  (Def.'s Ex. 8, Albers Dep. at 17, 35, & 37).  Neither identified

the face of the man in the video.

After these identifications, Double prepared a photographic line up containing a

photograph of Broadnax.  Ciceri identified Broadnax in the lineup.  Her identification was the

basis for probable cause for issuing a warrant for Plaintiff's arrest.  The warrant was issued on

May 6, 2011.  After he heard the Farmington Hills Police were searching for him, Plaintiff

contacted them and told them they could meet him at his home in Inkster.  On May 13, 2011,

Plaintiff was arrested, arraigned, and held in the Oakland County jail because he could not post

bond.

At the initial stage of the prosecution, the prosecutor asked Double if there was any

additional footage from the 7-Eleven.  Double stated there was none.  At the preliminary exam,

however, Double stated he had more footage from the 7-Eleven, but it only showed the front

door.  Double did not inform the judge at the preliminary exam he had eight camera angles of the 7-Eleven, he did not tell the prosecutor he only looked at #8, and he did not inform the court he only observed one angle out of the eight available to him.

Before trial, Double and the prosecutor went to the scene of the crime.  The prosecutor again asked Double if there was more footage.  Double failed to reveal the additional angles at that time.  On the first day of the trial, Plaintiff's attorney laid out a theory of impossibility as a defense.  Plaintiff was in Inkster at 3:57 p.m. on the day of the crime, according to his cell phone records.  He owned no car and depended on others for rides.  He could not have made it to Farmington Hills to carry out an attempted carjacking at 4:19 p.m.  The prosecution argued its "limited" video evidence would prove otherwise.  On the second day of the trial, Plaintiff's attorney raised concerns that the prosecution had not turned over all evidence in its possession. The trial judge asked the prosecution for any evidence it had not given the defense.  Double again did not give the prosecutor video footage in his possession that contained the extra camera angles.  On the second day of the trial, the prosecutor played angle #8 for the jury in slow motion.  The judge asked for a real time version of the video.  Double gave the prosecutor the DVD from his trial binder.  Upon observing the DVD, the prosecutor noticed all eight angles available on the 7-Eleven's surveillance video, and he reviewed each angle.  After viewing all of the angles, the prosecutor decided they contained exculpatory evidence, particularly angle #3. The next morning, the prosecutor informed the trial judge and Plaintiff's defense attorney of the other angles.  Plaintiff's attorney moved for a mistrial for failure to turn over evidence.  The judge granted the motion stating Plaintiff's constitutional rights had been violated.  That day, November 17, 2011, Plaintiff was released from the Oakland County jail after serving six months of incarceration.

### III.    Law and Analysis

#### A.  Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); see also *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48; see also *National Satellite Sports, Inc. v. Eliadis*, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing

party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).   Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252.   Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B.  Defendants' Motion for Summary Judgment

Defendants argue Plaintiff has failed to establish a claim that Double and the City of Farmington Hills deprived him of his constitutional rights under §1983.   Plaintiff must show defendant acted under color of state law and deprived him of his constitutional rights. *Upsher v. Grosse Pointe Pub. Sch. Sys*, 285 F.3d 448, 452 (6th Cir. 2002).   There is no dispute that Double is a state actor.   Defendants claim there is no violation of a constitutional right because there was probable cause to arrest Plaintiff.   Therefore, Defendants are entitled to a judgment as a matter of law on Plaintiff's federal claims.   In the alternative, Defendants raise qualified immunity as a defense to Plaintiff's federal claims.   Regarding Plaintiff's state law claims, Defendants argue they are entitled to judgment as a matter of law because there was probable cause for the arrest. In the alternative, Defendants argue government immunity is a defense to Plaintiff's state law claims.

### i.  False Imprisonment  and False Arrest

Under federal law, the plaintiff must show the arresting officer had no probable cause to make the arrest to establish a false arrest/imprisonment claim. *Painter v. Robinson*, 185 F.3d 557, 569 (6th Cir. 1999).   There is probable cause for an arrest when, in the mind of the officer,

facts and circumstances are sufficient to warrant a prudent person to believe the circumstances show  the suspect has committed or is about to commit a crime.  *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  In a §1983 claim, probable cause is usually a question for the jury unless there is only one reasonable determination.  *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989).

Defendants rely on the victim's statement identifying Plaintiff to support their argument for probable cause.[1]  *Crockett v. Cumberland College*, 316 F.3d 571, 582 (6th Cir. 2003); *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).  In *Ahlers*, a female inmate in the Washtenaw County Jail accused the officer who booked her of sexual assault.  *Ahlers,* 316 F.3d at 367.  The state official in charge of the investigation turned his information over to the prosecutor to seek an arrest warrant based on the inmate's identification of Ahlers, Ahlers' refusal to cooperate with the police, corroborating statements by a fellow inmate, and a taped conversation of the victim/inmate and Ahlers.  *Id*. at 368.  At Ahlers' preliminary examination, the victim's memory was vague and Ahlers had passed two polygraph tests, so the state dropped the charges and released Ahlers.  *Id*.

The Sixth Circuit Court of Appeals upheld the district court's grant of summary judgment to the state  in Ahlers' subsequent §1983 claim because the state officials had probable cause to bring charges against Ahlers.  *Id*. at 369.  The Sixth Circuit held the state and county did not violate Ahlers' constitutional rights.  Ahlers claimed exculpatory, *Brady*, evidence was not given to the magistrate who issued his arrest warrant.  *Id*. at 370.  Ahlers argued if the magistrate had the evidence, there would not have been probable cause to arrest him.  *Id*.  The circuit court disagreed, and held the eyewitness identification was sufficient to establish probable cause for

---

[1] It is important to point out the Supreme Court views cross-racial identification as inherently suspect.  *Arizona v. Youngblood*, 488 U.S. 51, 71 n.8 (1988).

arrest, unless there is reason to believe the witness is lying, not accurately describing what they saw, or inaccurately describing the confrontation with the assailant. *Id*.

Defendants argue that Ciceri, Pappas, and Albers all identified Plaintiff. Plaintiff failed a polygraph test and his story conflicts with one alibi witness. (Def.'s Ex.1 at 19-22). Additionally, Defendants argue they have a facially valid arrest warrant, which is a complete defense to a federal false imprisonment claim. *Voyticky v. Village of Timberlake Ohio*, 412 F.3d 669, 667 (6th Cir. 2005). Therefore, Defendants argue they had probable cause to arrest Plaintiff.

However, defendants who intentionally give misleading information or intentionally omit information at the probable cause hearing for the arrest cannot use a facially valid warrant as a complete defense to a §1983 false imprisonment claim. *Voyticky*, 412 F.3d at 667. Plaintiff argues genuine issues of material fact exist as to whether Double had probable cause to arrest him. Officers must consider more than just evidence of guilt when determining if they have probable cause. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Probable cause depends on the totality of the circumstances. *Id*. Furthermore, good faith reliance on a probable cause determination in a warrant will not absolve the police of liability, if issuance of the warrant was based on the officer's misrepresentations to the court. *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006). Arresting officers can be liable for misrepresentations or omissions in the warrant affidavit. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir 2010). When the warrant affidavit contains false statements or material omissions, courts set those statements aside and include omitted information to determine whether the affidavit is still sufficient to support a finding of probable cause. *Id*. (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989); *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978)).

In *Sykes*, plaintiffs, employees of a cell phone store who were robbed at gunpoint, brought false arrest charges against a City of Detroit policeman under §1983.  *Sykes*, 625 F.3d at 299.  The officer investigating the robbery believed the robbery was an inside job and made falsifications and omissions in his warrant application in order to support a finding of probable cause to arrest the employees. *Id*. at 301.  The police arrested the employees after obtaining facially valid warrants.  *Id*. at 302.  The Sixth Circuit Court of Appeals upheld a jury verdict against the officer finding liability for false arrest based on omissions and misrepresentations in the warrant affidavit.  *Id*. at 307.  The court, applying the rule from *Hill* and *Franks*, set aside the false statements and omissions and determined the affidavit did not support a finding for probable cause and the officer was liable under §1983.  *Id*. at 308.

From the beginning, Double had an entire body of evidence to analyze.  He knew of all the 7-Eleven camera angles.  He only showed Ciceri, Pappas, and Albers one camera angle from the Rare Coins video surveillance.  According to Plaintiff's police expert, Double was obligated to look at all angles.  (Pl.'s Ex. L).  Double's police report created the impression that the additional footage did not exist or had no effect on a finding of probable cause.  Double did not tell the district attorney about the additional angles when he asked Double if there was more evidence.  The district attorney immediately recognized the other angles as exculpatory when he viewed them.  Although the victim identified the man in the video, *Ahlers* does not stand for the proposition that an eyewitness' identification relieves police officers from their duty to consider the totality of the circumstances when determining if probable cause exists.

Applying *Sykes*, the Court must disregard Double's false statements regarding the existence of more evidence and consider the additional camera angles.  Any bias present in Pappas' and Albers' identification, the suspect nature of the victim's cross-racial identification,

and the state trial judge's conclusion Defendants violated Plaintiff's constitutional rights are evidence there is more than one reasonable determination on probable cause. The standard of review also requires the Court to construe all inferences in Plaintiff's favor. In §1983 claims, probable cause is a question for the jury unless there is only one reasonable determination. Because there is more than one reasonable probable cause determination, the issue of probable cause presents a jury question. Defendant is not entitled to judgment as a matter of law on Plaintiff's false arrest/imprisonment claim.

### ii. Malicious Prosecution

The Sixth Circuit recognizes a separate constitutionally cognizable claim under the Fourth Amendment, and that claim encompasses malicious prosecution. *Sykes*, 625 F.3d at 308; *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006). The claim of malicious prosecution turns on whether there was probable cause to institute criminal proceedings. *Sykes*, 625 F.3d 308. A plaintiff bringing a malicious prosecution claim must prove a criminal prosecution was brought against the plaintiff and defendant influenced or participated in the decision to prosecute, there was a lack of probable cause for the criminal prosecution, plaintiff suffered a deprivation of liberty as a result of the legal proceeding, and the criminal proceeding must have been resolved in plaintiff's favor. *Id.* The malicious prosecution claim fails if there is probable cause to pursue charges against the plaintiff. *Barnes*, 449 F.3d at 716.

Defendants argue they are entitled to judgment as a matter of law on this claim because there was probable cause to arrest Plaintiff. Their argument is unavailing. In order to establish probable cause, Defendant Double intentionally omitted evidence to obtain a warrant. Moreover, once Defendants arrested Plaintiff, they failed to investigate the facts they believed lead to probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). During the period between arrest

and the preliminary hearing, the arrestee's need for a neutral probable cause finding increases greatly.  *Id*.  Double made no attempts to hand over the other angles to the prosecutor throughout the whole case.   Furthermore, Double did not turn this evidence over to meet his *Brady* obligation.  Instead, he gave the prosecutor the DVD to show the jury the same view at a normal speed.  The prosecutor saw the other angles and immediately considered them exculpatory.

Defendants also argue collateral estoppel prevents Plaintiff from relitigating the state court's probable cause determination in federal court.  Collateral estoppel applies when there is identity of parties across proceedings,  there was a valid and final judgment in the first preceding, the same issue was actually litigated and necessarily determined in the first preceding, and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier preceding.  *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001).  However, a previous finding of probable cause does not have a preclusive effect when based on a police officer supplying false information in order to obtain the warrant.  *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007).  In a §1983 claim for malicious prosecution, there is no identity of issues being litigated when the plaintiff challenges the state court's finding of probable cause when the defendant-officers knowingly supplied misleading statements to the magistrate.  *Darrah*, 255 F.3d at 311.

The state brought criminal charges against Plaintiff and Defendants' reports influenced the decision to prosecute.  Defendants failed to further investigate the facts that lead to probable cause for the arrest between the arrest and preliminary examination.  Therefore, a reasonable jury could find there was a lack of probable cause for the criminal investigation.  The criminal proceeding was resolved in Plaintiff's favor once the evidence Defendant Double turned over to the prosecutor showed footage containing addition angles.  Plaintiff is challenging the state

court's finding of probable cause based on omissions and false statements made in order to obtain probable cause to prosecute.  This means there is no identity of issues.  Therefore, collateral estoppel does not apply.  Defendant is not entitled to judgment as a matter of law on Plaintiff's malicious prosecution claim.

### iii.   Denial of Due Process – *Brady* Violation

The government is required to turn over to the defendant any exculpatory evidence in its possession.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Suppression of such evidence violates due process. *Id*.  The obligation to turn over exculpatory evidence resides with the police as well as prosecuting attorneys.  *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009).  There are three elements to a *Brady* violation: 1) the evidence must be favorable to the accused either exculpatory or impeaching, 2) the state must have suppressed the evidence either willfully or inadvertently, and 3) prejudice must have ensued.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Defendants argue Plaintiff fails to meet the second and third elements.

Regarding the second element, Defendants argue Double neither suppressed nor withheld evidence.  Defendants also argue the extra angles should have been known to Plaintiff's counsel at his criminal trial.  However, Defendants overlook the fact that a *Brady* violation can occur from inadvertent suppression as well.  The prosecuting attorney asked Double if there was more footage on multiple occasions and Double either failed or refuse to share the additional angles.

Regarding the third element, Defendants argue there can be no prejudice because the state court dismissed the case in Plaintiff's favor.  *O'Hara v. Brigano*, 499 F.3d 492, 503 (6th Cir. 2007).  Although the outcome of the trial was in Plaintiff's favor, he was confined to jail for six months.  Defendants' Motion would have the Court believe a six-month confinement followed by a dismissal in Plaintiff's favor makes the circumstances leading thereto irrelevant to the issue

of prejudice.  That is not the Supreme Court's interpretation of how confinement affects an individual.  Pre-trial confinement may jeopardize work, one's stream of income, and impair family relationships. *Gerstein*, 420 U.S. at 114.  The Court has held arrest is a public act that has the potential to negatively impact one's finances and disrupt personal and family relationships. *United States v. Marion*, 404 U.S. 307, 320 (1971).

Plaintiff argues the suppression of evidence at his preliminary examination was the cause of his prejudice.  (Pl.'s Rep. at 5).  The exam ended with Plaintiff being bound over for trial and held in the county jail for six months. *Id*.  The deprivation of liberty for half a year due to concealment of evidence, whether deliberate or inadvertent, is serious enough to justify denying Defendants judgment as a matter of law on this issue when the facts are viewed in a light most favorable to Plaintiff.

Although the concealment may not have been willful, it might have been inadvertent. The nature of the concealment presents a jury question.  Defendant is not entitled to judgment as a matter of law on Plaintiff's due process violation claim.

### iv.  Defendant Double's Qualified Immunity

Government officials acting in their official capacity are entitled to qualified immunity for discretionary acts when those acts do not violate clearly established statutory and constitutional rights a reasonable person would know exist. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The court must apply a two-part analysis when determining if an official can claim qualified immunity. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  The court must determine whether the plaintiff has alleged facts, when taken in a light most favorable to him, to show the official's conduct violated a constitutional right. *Id*.  If so, the court must determine

whether the right was so clearly established that a reasonable official, at the time the act was committed, would have understood his behavior violated that right. *Id.*

Defendants first argue no constitutional violation occurred. Defendants also argue even if a violation did occur, Double's action did not violate a clearly established constitutional right. A right is clearly established when it is clear to an official his conduct was unlawful when he acted. Therefore, the appropriate question is whether a reasonable officer could have believed that his actions did not violate the law. *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

Ciceri's eyewitness identification is suspect given her brief chance to observe the suspect and its cross-racial nature. (Pl.'s Ex. C at 68); *Youngblood*, 488 U.S. at 71 n.8. Pappas did not recognize the Plaintiff's face, rather how the suspect in the video carried himself. (Pl.'s Ex. C at 46-47). Double only shared the footage from the Rare Coins camera with the media, Ciceri, Pappas, and Albers. *Id* at 37-38. Pappas is the sister of a woman with whom Plaintiff is involved in a very contentious custody battle. *Id.* Before the preliminary exam, Double failed to disclose the extra footage. When the prosecutor saw the footage, he treated it as *Brady* evidence. When viewed in a light most favorable to Plaintiff, the facts show a violation of his due process rights occurred. *Brady*, 373 U.S. at 83; *Moldowan*, 578 F.3d at 381. Further, a reasonable officer would have understood that failing to disclose the other camera angles that were exculpatory would violate an individual's due process rights. Therefore, Double cannot successfully claim qualified immunity.

### v. *Monell* Claim Against the City of Farmington Hills Under § 1983.

Municipal liability exists under §1983 only when a city's policy or custom causes the plaintiff's injury. *Monell v. New York City Police Department*, 436 U.S. 658, 694 (1978). In

claims against police departments, plaintiffs must identify the department policy, show a connection between the city and the policy, and show they incurred an injury because of the execution of the policy. *Garner v. Memphis Police Department*, 8 F.3d 358, 364 (6th Cir. 1993). In order to survive a motion for summary judgment on a *Brady* violation against a municipality, plaintiff must show that the police department's training did not address handling of exculpatory evidence, and that failure is highly predictable of the constitutional harm plaintiff suffered. *Gregory,* 444 F.3d at 753.

In *Gregory*, the plaintiff sought liability against the city of Louisville for failure to train its officers on how to handle exculpatory evidence. *Id*. at 731. The Sixth Circuit Court of Appeals overturned the district court's decision granting summary judgment to Louisville. The *Gregory* court held the plaintiff's evidence was sufficient to present genuine issues of fact on his claim of failure to train. *Id*. at 754. The *Gregory* plaintiff produced expert testimony that a training program was nonexistent, as well as deposition testimony and other inferential evidence demonstrating the officers did not receive training on how to handle exculpatory evidence. *Id*. at 753-54. The police department only produced deposition testimony from a former police chief stating the department trained officers to turn all evidence over to prosecuting attorneys. *Id*.

Plaintiff argues the city of Farmington Hills is liable for a violation of his due process rights because Double's supervisor testified at a deposition that Double's conduct was acceptable for this particular case. (Pl.'s Ex. D at 32-33). According to Plaintiff, Double's failure to view all camera angles and turn them over to the prosecutor was the result of policy or lack of training. Plaintiff, however, points to no policy of the Farmington Hills Police Department on the handling of such evidence. Furthermore, the deposition testimony submitted to the court does not contain any details of Double's department-wide training. (Pl.'s Ex. D). Although

Plaintiff's expert has submitted an affidavit on training, Plaintiff has not come forward with adequate evidence to create a genuine issue of fact as to the City of Farmington Hills' liability for failure to train.

The Court must look at all facts in a light most favorable to the non-movant at the summary judgment phase, but the non-movant still has an obligation to come forward with evidence that shows there is a genuine issue for trial.  Unlike the plaintiff in *Gregory*, Plaintiff has failed to come forward with inferential evidence to produce a genuine issue for trial on Farmington Hills' failure to train.  Therefore, the City of Farmington Hills is entitled to judgment as a matter of law on Plaintiff's *Monell* claim.

### vi.   State Law Claims of False Arrest, False Imprisonment, and Malicious Prosecution

Defendants argue Plaintiff cannot establish a claim for these state causes of action because there was probable cause to arrest Plaintiff.  For the reasons stated above, the Court finds genuine issues of fact exist as to whether there was probable cause to arrest Plaintiff.  The existence of probable cause is critical to a false imprisonment/arrest claim because without it the detention is unlawful.  *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351, 362 (Mich. Ct. App. 2003).  Genuine issues of fact exist on whether there was probable cause, so Defendants are not entitled to judgment as a matter of law on these claims.

To make a prima facie claim for malicious prosecution, the plaintiff must prove proceedings terminated in his favor, there was no probable cause for the proceedings, malice, and a special injury flowing from the proceedings.  *Moldowan*, 578 F.3d at 390 (quoting *Payton v. City of Detroit*, 211 Mich. App. 375, 536 N.W.2d 233 (Mich. Ct. App. 1995)).  Malice is bringing a proceeding against a defendant for a purpose other than obtaining proper adjudication

of the claim.  *Id*.  Parties do not dispute that criminal proceedings took place and ended in Plaintiff's favor.  Plaintiff suffered an injury.  Plaintiff plead malice in his complaint, but does not assert any facts in his brief that present an issue of fact as to whether the proceedings had a purpose other than obtaining proper adjudication.  Unlike Plaintiff's federal claim for malicious prosecution, the prima facie case for malicious prosecution under Michigan law requires malice. *Sykes*, 625 F.3d at 309.  Therefore, both Defendants are entitled to judgment as a matter of law on Plaintiff's state law claim of malicious prosecution.

### vii.   Defendant's Governmental  Immunity on State Law Claims

Defendants argue governmental immunity bars Plaintiff's tort claims.  Under Michigan law, government employees are immune from intentional tort liability if the challenged acts were undertaken during the course of their employment, the acts were undertaken in good faith, and the acts were discretionary rather than ministerial in nature.  *Odom v. Wayne County*, 482 Mich. 459, 461, 760 N.W.2d 217 (2008) (citing *Ross v. Consumers Power Co.*, 420 Mich. 567, 633, 363 N.W.2d 641 (1984)).  A government employee is acting within the scope of his employment when he is acting in the course of his employment and was acting or reasonably believes he was acting within the scope of his employment.  *Id*. at 473.  Good faith is the absence of malice, or wanton or reckless disregard for the rights of others.  *Id*. at 474.  An officer's conduct is wanton misconduct when his actions show indifference to whether harm will occur.  *Burnett v. City of Adrian*, 414 Mich. 448, 455, 326 N.W.2d 810 (1982).  Good faith is subjective.  *Odom*, 461 Mich. at 482.  Defendant's honest belief he is acting in good faith is protection from liability.  *Id*. An act is ministerial in nature when it is done in obedience to orders or carried out by one who has little or no choice.  *Ross*, 420 Mich. at 643.

Defendants argue Double made a probable cause determination that was the basis for the false arrest/imprisonment claim. Plaintiff argues there was an obligation to turn over exculpatory evidence. The legality of a detention under Michigan law turns on whether there is probable cause for the underlying arrest. The probable cause determination is discretionary. *Odom*, 461 Mich. at 476. Plaintiff attempts to argue around this by focusing on Double's *Brady* rule violation. Plaintiff argues Double had no discretion to conceal evidence. The Plaintiff's relief for the concealment of evidence is the §1983 claim he is already alleging. Double's decision that there was probable cause to arrest was discretionary. Therefore, governmental immunity under Michigan law applies to Plaintiff's state law claims of false imprisonment/arrest.

### viii.  Gross negligence

Plaintiff argues Defendants' conduct constitutes gross negligence under Michigan law. Government employees have immunity from tort liability for injuries they cause in the scope of their employment so long as their conduct does not amount to gross negligence that is the proximate cause of the injury or damage. MICH. COMP. LAWS § 691.1401(2)(c). Gross negligence is conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

The facts of this case demonstrate there are material questions of fact as to whether Double's conduct was grossly negligent. Defendants are not entitled to judgment as a matter of law on Plaintiffs gross negligence claim.

### C.  Plaintiff's Motion for Summary Judgment

Here, Plaintiff is moves for summary judgment on the same federal claims the Defendant sought false arrest/imprisonment, malicious prosecution, the *Brady* due process claim and the *Monell* claim. In the above analysis, the Court has determined that there are questions of fact

that exist as to the first three claims.  Therefore, Plaintiff's Motion for Summary Judgment as to these claims is denied.

The court has granted Defendant City of Farmington Hills' Motion for Summary Judgment on the unconstitutional policies and practices claim.  Thus,  Plaintiff's Motion with respect to that claim is likewise denied.

## IV.    Conclusion

For the reasons articulated above, Defendants' Motion for Summary Judgment [#29] is GRANTED IN PART and DENIED IN PART.  Counts IV, V, VI, and VII are DISMISSED.  Plaintiff's Motion for Summary Judgment [#30] is DENIED.


SO ORDERED.


Dated: September 24, 2013                        /s/Gershwin A Drain_____
                                                 GERSHWIN A. DRAIN
                                                 U.S. District Court Judge